NOT FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-1633

STATE OF LOUISIANA

VERSUS

DESMOND JOSEPH SENEGAL

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 103738
HONORABLE HERMAN C. CLAUSE, PRESIDING
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir and Marc T. Amy, Judges.

AFFIRMED, AS AMENDED.

Michael Harson, District Attorney
David Hutchins, Assistant District Attorney
Courthouse Building
P.O. Box 3306
Lafayette, LA 70502
(337) 232-5170
COUNSEL FOR APPELLEE:
    State of Louisiana

W. Jarred Franklin
3001 Old Minden Road
Bossier City, LA 71112-2426
(318) 746-7467
COUNSEL FOR DEFENDANT-APPELLANT:
    Desmond Joseph Senegal

**COOKS, Judge.**

This case is back before this Court on remand from the Louisiana Supreme Court with instructions that we consider Defendant's remaining assignments of error which were pretermitted on original appeal. We found merit in Defendant's assignment that the Bill of Information used to charge him was substantively defective because it referenced his prior conviction for distribution of counterfeit cocaine in the bill of information charging defendant with possession of cocaine.

## FACTS AND PROCEDURAL HISTORY

Defendant, Desmond Joseph Senegal, was charged by bill of information with possession of cocaine, second offense, in violation of La.R.S. 40:967 and 40:982. Defendant waived his right to a jury trial and a bench trial was held. The trial judge convicted Defendant of the charged offense and ordered that a presentence investigation report be completed. Defendant was subsequently sentenced to serve five years at hard labor with credit for time served. Defendant appealed his conviction and sentence. This court vacated his conviction and sentence and remanded the case for further proceedings. *State v. Senegal*, 05-1633 (La.App. 3 Cir. 5/24/06), 931 So.2d 450. The Louisiana Supreme Court reversed, concluding that "Defendant's failure to file a motion to quash based on the allegation of his prior conviction for distribution of a counterfeit controlled dangerous substance in the bill of information charging him with possession of cocaine, second or subsequent offense, waived the error on appeal." *State v. Senegal*, 06-1351 (La. 9/28/07), ___ So.2d ___. The case was remanded back to this court for consideration of Defendant's remaining assignments of error. In these assignments of error, Defendant contends the evidence was insufficient to convict him, that the evidence was illegally obtained, and finally that his sentence is excessive.

-1-

The facts of this case were set forth in our earlier opinion, as follows:

> On July 2, 2004, after 10:00 p.m., Officer Brian Gilbert, assigned to the Lafayette street level narcotics unit, was patrolling in the vicinity of Sunnyside Street, a high crime area. Officer Gilbert testified he saw Defendant, Desmond Joseph Senegal, riding a bicycle with no headlight in the travel lane of a city street. Since there is a statute which requires bicycles to have headlights after dark, Officer Gilbert conducted a traffic stop. Upon speaking with Defendant, Officer Gilbert noticed he was nervous and began shaking. According to Officer Gilbert, Defendant was looking around, and the officer assumed he was looking for "a path of maybe an exit, if he was going to run."
>
> A safety patdown search of Defendant was conducted by Officer Gilbert, during which Officer Gilbert noticed the Defendant was chewing on something. Officer Gilbert testified that it is common for street level drug dealers to consume narcotics in an attempt to destroy evidence. Prior to the patdown, Defendant did not want to talk or look at Officer Gilbert and this made Officer Gilbert believe that he might be destroying evidence. Officer Gilbert handcuffed Defendant for his safety and advised Defendant of his Miranda rights. He then asked Defendant to spit on the ground, which he did voluntarily. Officer Gilbert testified he noticed some white crumb residue in the saliva, so he took his business card and scraped it up off the ground. A field test conducted on the substance indicated the presence of cocaine. Officer Gilbert testified he then advised Defendant he was under arrest and he detained him in his car while he secured the evidence. After being advised of his Miranda rights, Defendant stated that he had eaten two rocks of cocaine and that he was out trying to take care of his family.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent. Defendant was not informed of the two-year time limit for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. *See State v. Fontenot*, 616 So.2d 1353 (La.App. 3 Cir.), *writ*

*denied*, 623 So.2d 1334 (La.1993); and *State v. Courtney*, 99-1700 (La.App. 3 Cir. 5/3/00); 761 So.2d 112.

## ASSIGNMENT OF ERROR NO. 1

Defendant contends the evidence presented by the State was insufficient to convict him of second offense possession of cocaine. Specifically, Defendant alleges that the business card on which the alleged cocaine was collected was carried in the officer's pocket and subject to coming in contact with anything in his pocket, including narcotics from other arrests. Further, Defendant alleges it is possible the crumbs of cocaine were on the ground prior to him being ordered to spit out the contents of his mouth on the ground. Accordingly, he claims the State failed to exclude these reasonable hypotheses of innocence. In support of his position, Defendant argues the fact that the amount of cocaine on the card was undetectable and incapable of objective measurement means the cocaine more likely came from a source other than him.

Although Defendant admitted to the officer that he had ingested cocaine earlier in the day and was possibly under the influence of the drug, he points to the fact that no cocaine was found on his person at the time he was stopped. He contends that cocaine ingested and located only in bodily fluids does not satisfy the possession requirement.

Finally, Defendant argues the State failed to prove his prior conviction because no mugshots or fingerprints were compared with those in the previous record, nor testimony presented regarding whether he was the same person previously convicted.

Louisiana Revised Statutes 40:967 declares it is illegal to knowingly and intentionally possess a Schedule II drug, one of which is cocaine. Second or subsequent offenders are subject to an increased penalty pursuant to La.R.S. 40:982.

-3-

In *State v. Major*, 03-3522, p. 7 (La. 12/1/04), 888 So.2d 798, 802, the supreme court stated, "Possession of narcotic drugs can be established by actual physical possession or by constructive possession. . . . A person can be found to be in constructive possession of a controlled substance if the State can establish that he had dominion and control over the contraband, even in the absence of physical possession." (Citations omitted).

At trial, Lafayette police officer Brian Gilbert testified he is in the Action Unit, commonly referred to as the street level narcotics unit. On July 2, 2004, after 10:00 p.m., he was patrolling the area of Sunnyside Street, a high crime area. Officer Gilbert saw Defendant riding a bicycle with no headlight in the travel lane of a city street after dark, which is a violation of a local ordinance. A traffic stop was conducted and upon speaking with Defendant, Officer Gilbert noticed he was nervous and began shaking. According to Officer Gilbert, Defendant was looking around, and he assumed he was looking for "a path of maybe an exit, if he was going to run." Officer Gilbert then chose to conduct a safety patdown search of Defendant, during which Officer Gilbert noticed the Defendant was chewing on something. Officer Gilbert believed Defendant may have been trying to consume narcotics in an attempt to destroy evidence. Officer Gilbert handcuffed Defendant for his safety and advised him of his Miranda rights. He then asked Defendant to spit on the ground, which he did voluntarily. Officer Gilbert testified he noticed some white crumb residue in the saliva, so he took his business card and scraped it up off the ground. A field test conducted on the matter indicated the presence of cocaine.

Officer Gilbert then told Defendant he was under arrest and detained him in his car while he secured the evidence. After being advised of his Miranda rights, Defendant stated he had eaten two rocks of cocaine and that he was out trying to take

care of his family.

The business card used by Officer Gilbert to obtain the saliva was put into a plastic bag at the scene. Officer Gilbert testified that after he observed the particles of what he believed to be crack cocaine in Defendant's saliva, he scraped some off into the field test kit. After confirming the test was positive, he then took the card and got what he could of the remaining saliva on the ground.

The evidence was placed in the evidence locker at the police station by Officer Gilbert. Corporal Scott Morgan of the Lafayette City Police Department testified he transported the evidence to the Acadiana Crime Lab. Wanette Haycock, a lab technician at the Acadiana Crime Lab, testified that she received the evidence from Corporal Morgan.

Laurette Rapp, a forensic chemist at the Acadiana Crime Lab, testified that she did a rinse of the card for the residue contained on the card. The substance was then analyzed by a gas chromatography mass spectrometer and cocaine was detected. She explained that the test does not distinguish between crack or cocaine powder. She testified because there was such a small amount of the substance, a "tiny bit of visible residue," any preliminary testing she could have done would have been destructive and it could not have been used in court. She had the option of either scraping off the residue or rinsing it. Because of the small amount, she chose to rinse the card with an acidic solution. When Ms. Rapp was asked what the weight of the cocaine was, she replied, "There was no weight. . . . the amount that I could see was too small to put on the scale to give a valid number. So, in that case our procedure required us to rinse the card and give you a result."

As discussed above, Defendant first alleges the cocaine could have come from inside the officer's pocket, perhaps from narcotics from other arrests, or that it was

on the ground prior to him being ordered to spit out the contents of his mouth.

A somewhat similar situation was before the second circuit in *State v. White*, 36,935 (La.App. 2 Cir. 6/6/03), 850 So.2d 751, *writ denied*, 03-2616 (La. 5/14/04), 872 So.2d 510. In that case, an officer searched the back seat area of the patrol car which transported a defendant to the police station. During the search, a small clear plastic bag was found on the passenger floorboard. The bag contained a white powder, later determined to be cocaine. The bag was not sealed closed and there was a thick clear liquid that appeared to be saliva, on the outside and inside of the bag. Later DNA testing on the substance on the bag revealed that it matched the DNA of the defendant.

On appeal, the defendant challenged the sufficiency of his conviction for possession of cocaine. Specifically, he contended that there was a possibility that his DNA was found on the bag of cocaine because his sweat or spit came in contact with the bag while he was in the patrol car.

The second circuit rejected the defendant's argument, stating:

> In the present case, the state presented expert scientific evidence that the substance contained in the small plastic bag recovered from the police car was cocaine and that the defendant's DNA was found inside that bag. A reasonable juror could conclude that the presence of the defendant's DNA in the bag of cocaine was sufficient to prove direct physical contact with and control of the drug. This evidence also proved that the cocaine was subject to defendant's dominion and control and that he knew of its existence. Thus, the trier of fact could reasonably conclude that the state established defendant's actual and constructive possession of the cocaine.

> In addition, the arresting officer testified that he always searched the passenger compartment of his police vehicle before and after transporting criminals and that he had searched the defendant (but not his mouth) before placing him in the backseat. After the defendant was transported to the police station, a search of the backseat area revealed an unsealed bag of cocaine, which the state proved contained the defendant's DNA. These circumstances support the inference that the defendant held the small, open bag of cocaine in his mouth and spit it out onto the floor of the police vehicle in an effort to avoid detection

because of his guilty knowledge that he was in possession of the illegal substance.

Viewed in the light most favorable to the prosecution, the evidence presented was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime of possession of cocaine. The assignment of error lacks merit.

*Id.* at 759.

In the present case, Officer Gilbert testified he saw Defendant chewing something prior to ordering him to spit out the contents of his mouth on the ground. A field test as well as later lab analysis confirmed that the substance collected by Officer Gilbert contained cocaine. Additionally, Defendant admitted to Officer Gilbert that he had eaten two rocks of cocaine. Thus, the evidence presented was sufficient for a rational trier of fact to find beyond a reasonable doubt that Defendant knowingly and intentionally possessed cocaine. Accordingly, we find Defendant's claims of alternative hypotheses of innocence are without merit.

Defendant additionally argues, although he admitted to the officer he ingested cocaine earlier in the day and was possibly under the influence of the drug, he was not in possession of cocaine at the time he was stopped. He contends cocaine already ingested and located only in bodily fluids does not satisfy the possession requirement. This argument has no merit.

In this case, cocaine was recovered from Defendant's mouth and testing established that it was in fact cocaine. Furthermore, Defendant admitted to Officer Gilbert that he had ingested two rocks of cocaine. Under these circumstances, we find the State proved beyond a reasonable doubt that Defendant possessed cocaine.

As for Defendant's allegation that the State failed to prove his identity as the person previously convicted of a drug offense, we note this court, in reviewing the sufficiency of the State's proof of identity in a third offense DWI case, has stated:

>Various methods may be used to prove that the defendant on trial is the same person whose name is shown as the defendant in the evidence of a prior conviction, such as by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared with those of the person previously convicted, by photographs contained in a duly authenticated record, or by evidence of identical driver's license number, sex, race and date of birth. See, *State v. Curtis*, 338 So.2d 662 (La.1976); *State v. Westbrook*, 392 So.2d 1043 (La.1980). However, the mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. *State v. Curtis*, supra.

These same methods of proof are utilized for proving identity in habitual offender proceedings. *See State v. Payton*, 00-2899 (La. 3/15/02), 810 So.2d 1127.

In the present case, to prove Defendant was the same person previously convicted, the State introduced the arrest register containing Defendant's personal information obtained by Officer Gilbert from Defendant and certified court minutes and the clerk's file from the previous case. The documents from the previous conviction, compared with the regular arrest register from the instant offense, establish Defendant's name, sex, race, date of birth and social security number were all the same. Thus, the State sufficiently established Defendant's identity.

## ASSIGNMENT OF ERROR NO. 2:

Defendant claims the cocaine found in Defendant's saliva was unlawfully obtained without a warrant. He claims a warrant should have been secured before Officer Gilbert ordered Defendant to spit out the contents of his mouth. Defendant additionally argues the State failed to produce any evidence at the hearing on the suppression motion, thus failing to meet its burden of proof.

Defendant's motion to suppress hinged on his assertion that the evidence was seized after an unlawful, pretextual stop. When the motion was taken up prior to trial, Defendant's argument was limited to that set forth in the written motion. The motion was denied at that point, but reurged by Defendant after the State presented its case.

Again finding the stop was not a pretext, the trial judge denied the motion. Shortly thereafter, defense counsel argued, "[n]ot only the stop but the circumstances immediately following the stop. It seems to me that the officer could have written, and should have written, a citation and had no probable cause to believe that he was chewing cocaine and then go into that part of the investigation." The judge again denied the motion to suppress.

The issue now being raised, whether the State proved an exception to the warrantless search requirement, was not raised in the motion to suppress nor in the argument presented when the motion was reurged at trial. This new basis for the claim cannot be raised for the first time on appeal. In *State v. Jackson*, 04-1388 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, *writ denied*, 05-1740 (La. 2/10/06), 924 So.2d 162, the court stated:

> A defendant bears the burden of asserting the basis for his Motion to Suppress in order to give the State adequate notice so that it may present evidence and address the issue. La.C.Cr.P. art. 703(E); *State v. Smith*, 94-120, p. 4 (La.App. 5 Cir. 5/31/94), 638 So.2d 452, 455. After the defendant files a Motion to Suppress, the State has the burden to prove the defendant's confession was of a free and voluntary nature. La.C.Cr.P. art. 703(D). Therefore, the defendant is limited, on appeal, to the grounds he articulated at trial; a new basis for the claim, even if it would be meritorious, cannot be raised for the first time on appeal. *State v. Smith*, 638 So.2d at 455-456. *See also, State v. Torregano*, 03-1335, p. 3 (La.App. 5 Cir. 5/11/04), 875 So.2d 842, 845; *State v. Richardson*, 00-1551, p. 6 (La.App. 5 Cir. 8/28/01), 795 So.2d 477, 482, *writ denied*, 01-2670 (La.8/30/02), 823 So.2d 939.

*See also,* Uniform Rules – Court of Appeal, Rule 1-3.

Accordingly, this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NO. 4

Defendant claims his sentence is excessive and that the trial court failed to consider the factors listed in La.Code Crim.P. art. 894.1 in imposing his sentence. Defendant did not file a motion to reconsider sentence; thus, on appeal his sentencing

claim is limited to review for bare excessiveness. *See State v. Dabney*, 01-1110 (La.App. 3 Cir. 6/25/03), 848 So.2d 784, *State v. Graves*, 01-156 (La.App. 3 Cir. 10/3/01), 798 So.2d 1090, *writ denied*, 02-29 (La. 10/14/02), 827 So.2d 420, and La.Code Crim.P. art. 881.1.

The standard used for reviewing excessive sentence claims was recently discussed by this court in *State v. Authement*, 06-1182, pp. 8-9 (La.App. 3 Cir. 2/7/07), 950 So.2d 156, 161:

> This court has set forth the following standard to be used in reviewing excessive sentence claims:
>
>> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331.
>
> In order to determine whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has held:
>
>> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501. While a comparison of sentences imposed for similar crimes may

provide some insight, "[i]t is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1[, 3] (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784[, 2] (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

Defendant was sentenced to a term of five years at hard labor. This is considerably less than the maximum of ten years and a $10,000.00 fine that could have been imposed. Although there was some disagreement at the sentencing hearing between the prosecutor and defense attorney as to whether Defendant had two prior felony convictions or three, clearly, he had at least one prior conviction in addition to the one used for purposes of La.R.S. 40:982.

In the present case, Defendant received a mid-range sentence with no fine and he had at least one, if not two, prior felony convictions in addition to the one used for enhancement purposes. Thus, under the circumstances of this case, the trial court did not abuse its discretion in imposing a five-year sentence.

## DECREE

For the foregoing reasons, Defendant's conviction and sentence are affirmed. The trial court is directed to inform Defendant of the provisions of Article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings.

**AFFIRMED, AS AMENDED.**

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.**